RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0204p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

CHRISTOPHER JAMES HEMWALL,

                *Petitioner-Appellant,*

  *v.*

ADAM DOUGLAS, Warden,

                *Respondent-Appellee.*

No. 25-1566

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:24-cv-12750—Brandy R. McMillion, District Judge.

Argued:  April 28, 2026

Decided and Filed:  July 24, 2026

Before:  THAPAR, BUSH, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:**  Haralambos D. Mihas, SMITH MIHAS, Wyandotte, Michigan, for Appellant. Nicholas Johnson, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.  **ON BRIEF:**  Haralambos D. Mihas, SMITH MIHAS, Wyandotte, Michigan, for Appellant.  Nicholas Johnson, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

───────────────

## OPINION

───────────────

MURPHY, Circuit Judge.  State prisoners who seek federal habeas relief generally must file their petitions within a year of the date that their state convictions become final.  But prisoners who do not file on time may seek to equitably toll this statute of limitations if they prove that they acted diligently and that extraordinary circumstances caused the tardy filing.

Here, Christopher Hemwall claims that he filed his habeas petition five months late because of the health difficulties of his attorney and his attorney's child. But the district court rejected this claim because Hemwall failed to show that these health difficulties *caused* Hemwall to file his petition after the deadline. We agree. Even if we assume that the difficulties could qualify as extraordinary circumstances, Hemwall did not establish a causal connection between them and the late filing. We affirm.

I

From 2005 to 2008, Hemwall sexually assaulted his twin half-sisters when the girls were between four and six years old. *See People v. Hemwall*, 2020 WL 5498600, at *1 (Mich. Ct. App. Sep. 10, 2020) (per curiam). For the most part, these assaults occurred at their home in Monroe County, Michigan. Hemwall abused one sister at least six or seven times and the other sister at least once. About a decade later, one of the girls began to worry that Hemwall might abuse his own daughter in the same way. So the sisters told their mother about the abuse in late 2017. Their parents quickly alerted the authorities.

The State of Michigan charged Hemwall with seven counts of first- or second-degree criminal sexual conduct. A jury convicted him of all but one of these counts. The trial court sentenced Hemwall to an indeterminate sentence of 210 to 480 months' imprisonment on the first-degree offenses (and a shorter sentencing range on the second-degree offenses to run concurrently with this punishment).

After receiving this sentence, Hemwall exhausted his appellate rights. A Michigan appellate court upheld his conviction on direct appeal. *See id.* at *1. The Michigan Supreme Court then denied his application for leave to appeal. *See People v. Hemwall*, 956 N.W.2d 218, 218–19 (Mich. 2021) (order). And Hemwall did not seek the U.S. Supreme Court's review. His convictions became final in August 2021.

Hemwall next sought post-conviction relief in Michigan's courts about five months later. In February 2022, he moved for relief from his final judgment, claiming that his trial counsel had provided ineffective assistance. The trial court denied his motion. An intermediate appellate court denied Hemwall leave to appeal. He finally exhausted his state remedies in January 2024

when the Michigan Supreme Court also denied him leave to appeal. *See People v. Hemwall*, 998 N.W.2d 701, 701 (Mich. 2024) (order).

Hemwall let another nine months pass before he turned to federal court. In October 2024, he challenged his convictions by filing a petition under 28 U.S.C. § 2254. The warden moved to dismiss this petition because Hemwall did not file it within the one-year statute of limitations. *See id.* § 2244(d)(1). In response, Hemwall conceded that he filed his petition late but sought to equitably toll the statute of limitations. He requested tolling based on the COVID-19 pandemic and the illness of his counsel and his counsel's child. *Hemwall v. Douglas*, 2025 WL 1691205, at *2–7 (E.D. Mich. June 16, 2025). The district court rejected these arguments and dismissed his petition. *Id.* at *2–9. But the court granted Hemwall a certificate of appealability because of the "unsettled standard for determining whether conditions related to a petitioner's habeas counsel may constitute grounds for equitable tolling" under our precedent. *Id.* at *9.

II

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a one-year statute of limitations for state prisoners who seek to pursue habeas challenges to their state convictions in federal court. *See* 28 U.S.C. § 2244(d). This limitations period runs from (as relevant here) "the date on which the [state criminal] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" *Id.* § 2244(d)(1)(A). Yet when deciding whether a state prisoner filed a petition within a year, courts must not count any "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim [was] pending[.]" *Id.* § 2244(d)(2).

Hemwall concedes that he did not file a timely federal petition under these rules. On March 30, 2021, the Michigan Supreme Court declined to review his direct appeal. *See Hemwall*, 956 N.W.2d at 218–19. At this time, the U.S. Supreme Court continued to follow a COVID-19-based order extending the period to file a petition for certiorari to 150 days. *See* Misc. Order Addressing the Extension of Filing Deadlines, 334 F.R.D. 801 (2020). Yet Hemwall did not seek the Court's review. So the parties agree that his state criminal "judgment"

became "final" on August 27, 2021—the date on which the time for seeking that review expired. 28 U.S.C. § 2244(d)(1); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Over five months (or 167 days) transpired between that date and the date on which Hemwall moved for state post-conviction relief: February 11, 2022. This motion paused the limitations period. *See* 28 U.S.C. § 2244(d)(2). He completed these state proceedings on the date that the Michigan Supreme Court denied further review: January 4, 2024. *See Hemwall*, 998 N.W.2d at 701. The statute of limitations started to run again at this point. *See Lawrence v. Florida*, 549 U.S. 327, 331–36 (2007). Hemwall still had 198 days to file a federal habeas petition within the one-year time limit. Because the last day fell on the weekend, his deadline became July 22, 2024. *See Hemwall*, 2025 WL 1691205, at *2; Fed. R. Civ. P. 6(a)(1)(C). But he did not file this petition until almost three months later on October 17 of that year.

To overcome this nearly three-month delay, Hemwall invokes the doctrine of equitable tolling. AEDPA's statute of limitations impliedly incorporates this doctrine. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). To postpone the expiration of the limitations period, though, Hemwall must prove two things. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Menominee Indian Tribe v. United States*, 577 U.S. 250, 256 (2016). He must prove that he sought to "diligently" exercise his rights. *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418). And he must prove that an "extraordinary circumstance" stopped him from filing in time. *Id.* (quoting *Pace*, 544 U.S. at 418); *see Borns v. Chrisman*, 167 F.4th 335, 346 (6th Cir. 2026).

We need to consider only the extraordinary-circumstance element here. *Cf. Lawrence*, 549 U.S. at 336–37. To establish this element, Hemwall must satisfy two requirements. *First*, he must identify an "extraordinary" factor. The Supreme Court has told us to undertake a fact-bound, case-by-case inquiry to decide whether a prisoner has shown an extraordinary circumstance. *See Holland*, 560 U.S. at 649–50. Still, a few guideposts exist. For example, an ordinary English speaker would call a factor "extraordinary" only if it was "'most unusual,' 'far from common,' or" with "little or no precedent." *Rutherford v. United States*, 146 S. Ct. 1320, 1330 (2026) (quoting *Webster's Third New International Dictionary* 807 (1976)); *see United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc). To qualify as extraordinary, moreover, the factor cannot have resulted from the prisoner's own conduct and instead must

have arisen from something outside the prisoner's "control." *Menominee Indian Tribe*, 577 U.S. at 257.  For both reasons, courts grant equitable tolling "sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *see Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011).

*Second*, even if Hemwall identifies an extraordinary circumstance, he must show that the circumstance "prevented him from filing on time." *Borns*, 167 F.4th 346.  That is, Hemwall must establish "a causal link between" the extraordinary circumstance and the late filing.  *Id.* at 347 (quoting *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011)).  And courts have suggested that prisoners cannot make this causal showing if they could have filed on time through the exercise of reasonable diligence despite the extraordinary circumstance.  *See Smith v. Davis*, 953 F.3d 582, 595 (9th Cir. 2020) (en banc); *United States v. Wheaten*, 826 F.3d 843, 852 n.61 (5th Cir. 2016); *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75–76 (2d Cir. 2001).

In this case, we must ask when the actions of a prisoner's attorney can create the type of extraordinary circumstance required to toll the statute of limitations.  If a late filing results from attorney *misconduct*, the answers at the extremes are clear.  On the one hand, typical negligence—such as an attorney's "miscalculation" of the habeas deadline—is not extraordinary. *Lawrence*, 549 U.S. at 336; *see Holland*, 560 U.S. at 651–52.  We must impute the attorney's conduct to the client because the attorney acts as the client's agent, so we cannot describe the attorney's actions as outside the client's control.  *See Maples v. Thomas*, 565 U.S. 266, 280–81 (2012).  And "the proper remedy" for attorney negligence "is generally a legal malpractice suit," "not equitable tolling." *Wershe v. City of Detroit*, 112 F.4th 357, 367 (6th Cir. 2024) (citation omitted).  On the other hand, if an attorney fully "abandons his client without notice," this abandonment can qualify as extraordinary. *Maples*, 565 U.S. at 281.  It "sever[s] the principal-agent relationship," such that courts can no longer hold the actions of the agent (the lawyer) against the principal (the prisoner).  *Id.*  These two answers leave a question in the middle: can egregious misconduct create an extraordinary circumstance if it rises above ordinary negligence but falls below complete abandonment?  The district court granted a certificate of appealability here because courts have split on this question.  *See Nassiri v. Mackie*, 967 F.3d 544, 549–50 (6th Cir. 2020) (citing cases).

But this case did not end up implicating the question. Hemwall has retained the same attorney on appeal who represented him in the district court: Haralambos Mihas. Hemwall thus has never claimed that Mihas committed misconduct. Rather, he says that Mihas filed an untimely petition because this attorney encountered his own extraordinary circumstances during the one-year filing period. According to Mihas, he contracted COVID-19 in January 2024, and this disease caused "post-COVID syndrome with fatigue" for the next "several" months. Resp., R.14, PageID 1913. To complicate matters further, Mihas's child began to suffer from medical problems "in March 2024" that required extensive testing for "several" more months. *Id.*, PageID 1914.

Might an attorney's personal difficulties create extraordinary circumstances for a client? In the abstract, we have answered "yes." *See Patterson v. Lafler*, 455 F. App'x 606, 610 (6th Cir. 2012); *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010); *Cantrell v. Knoxville Cmty. Dev. Corp.*, 60 F.3d 1177, 1180 (6th Cir. 1995). Take *Cantrell*. There, a plaintiff missed the deadline to file an employment claim, but the attorney who represented him had been removed from the practice of law "due to his mental state." *Cantrell*, 60 F.3d at 1179–80 & n.1. We held that the plaintiff could show extraordinary circumstances if he had been "*abandoned* by his attorney due to his attorney's mental illness[.]" *Id.* at 1180 (emphasis added). But we remanded for the district court to make factual findings on the issue. *Id.* Or take *Robertson*. There, an attorney suffered from a cocaine addiction and was arrested a month before his client's habeas deadline. *See Robertson*, 624 F.3d at 782–83. By the time the client's new attorney could file a petition, the deadline had come and gone. *Id.* at 783. We reasoned that the attorney's "[d]rug use could clearly impair [his] competence to the same extent as" an attorney's "mental illness." *Id.* at 785. We added that this drug use could qualify as "an extraordinary circumstance that warrants equitable tolling if it causes the attorney to *effectively abandon* his or her client." *Id.* (emphasis added).

According to the warden, the highlighted language from *Cantrell* and *Robertson* shows that we have held that prisoners must prove that their counsel's health problems caused counsel to abandon them (effectively terminating the lawyer-client relationship) for the prisoners to establish an extraordinary circumstance. And there is no claim that Mihas abandoned Hemwall

here. Despite this language, though, it is not obvious that we have categorically held that nothing short of abandonment will suffice. Elsewhere in *Robertson*, for example, we suggested that the district court should consider whether the lawyer's difficulties "affected his ability to file a timely habeas petition" when deciding whether it created an extraordinary circumstance. *Id.* And we could imagine circumstances equivalent to abandonment that might justify equitable tolling even if the attorney does not terminate the attorney-client relationship. Suppose the attorney has a heart attack on the petition's due date while polishing the final draft, and this unfortunate medical event causes the attorney to miss the deadline by a day. Those facts might not show complete abandonment. But perhaps they could establish an extraordinary circumstance to justify a day's worth of tolling.

Still, we need not decide on the scope of our extraordinary-circumstance rules in this setting. Even if we assume that an attorney's short-term medical incapacitation might rise to the required level, Hemwall's claim still fails. Recall that Hemwall must prove that the identified extraordinary circumstance *caused* the late filing. *See Borns*, 167 F.4th 346. And here, the district court found as a fact that Hemwall had not shown that Mihas's personal difficulties "*prevented*" Hemwall "from timely filing his petition." *Hemwall*, 2025 WL 1691205, at *7.

We see no error in this causation conclusion. Start with our standard of review. In other contexts, we have held that we review legal questions de novo and factual questions for clear error. *See, e.g.*, *United States v. Liggins*, 167 F.4th 894, 905 (6th Cir. 2026); *Singh v. Rosen*, 984 F.3d 1142, 1148 (6th Cir. 2021). And in other contexts, we have taken an issue-by-issue approach to our standard of review for the ultimate (or "mixed") question applying the identified legal rules to the identified facts. *See, e.g.*, *Rosen*, 984 F.3d at 1148; *United States v. Thomas*, 933 F.3d 605, 608–09 (6th Cir. 2019). In this equitable-tolling context, though, we seem to follow a different path. We have suggested that we review the district court's answer to the ultimate or mixed question (whether the facts show an entitlement to equitable tolling) de novo when the facts are undisputed and for abuse of discretion when they are disputed. *See Robertson*, 624 F.3d at 784 (citing *Dunlap v. United States*, 250 F.3d 1001, 1007 n.2 (6th Cir. 2001)).

Yet it would be unusual for our standard of review on the *same* mixed question to change depending on whether the parties dispute the facts. Courts, for example, do not review the ultimate question whether probable cause exists de novo when the parties agree on the facts and deferentially when they do not. Courts always review the question de novo. *See Ornelas v. United States*, 517 U.S. 690, 695–99 (1996). Likewise, we have not adopted differing standards of review for the ultimate question whether an immigrant has shown the required hardship to obtain cancellation of removal. Rather, we always review this question deferentially—whether or not the parties have disputed any of the underlying historical facts about the immigrant's circumstances. *See Baltazar Us v. Blanche*, 174 F.4th 509, 512–13 (6th Cir. 2026).

In any event, the parties' dispute does not turn on this mixed question. Rather, it turns on a *purely factual* question: did Mihas's personal difficulties cause Hemwall's late filing? We have traditionally reviewed fact questions like this one for clear error even in this habeas context. *See Houston v. Tanner*, 160 F.4th 683, 690 (6th Cir. 2025). We thus will apply that standard here. So we must uphold the district court's finding as long as it represents a plausible view of the record. *See United States v. Estrada-Gonzalez*, 32 F.4th 607, 614 (6th Cir. 2022).

This deferential standard forecloses Hemwall's claim. The district court identified many reasons why Hemwall failed to prove that his counsel's personal difficulties caused the untimely filing. First consider Mihas's other activities during the critical months from January to July 2024 while the statute of limitations ran on Hemwall's habeas petition. Over these months, Mihas accepted many new criminal cases, appeared in court, filed motions and memoranda, and generally practiced law. *See Hemwall*, 2025 WL 1691205, at *6–7 & nn.6–7. If Mihas's personal difficulties did not bar him from taking on new clients consistent with his ethical obligations, they could not have barred him from filing a timely habeas petition for Hemwall.

Next consider Mihas's allegations about the length of his personal difficulties. He suggested that they began in "January 2024" when he contracted COVID-19 and that they "lasted roughly five months." Resp., R.14, PageID 1913, 1916. Even if the difficulties completely incapacitated Mihas, then, he still had at least several weeks to file the habeas petition in July 2024.

Lastly consider the ease with which Mihas could have filed Hemwall's habeas petition. Federal law generally prohibits state prisoners from pursuing claims that they have not exhausted in state court or from developing evidence that they did not present to those courts. *See Shinn v. Ramirez*, 596 U.S. 366, 377–78 (2022); *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). So state prisoners must largely piggyback off their state-court work when pursuing their federal habeas claims. This case proves the point. Mihas represented Hemwall in his state post-conviction proceedings, not just his federal habeas proceedings. He filed a 40-page motion for relief from judgment in state court. And, as the district court explained, Mihas copied a large part of that state motion (word for word) into his federal habeas petition. *See Hemwall*, 2025 WL 1691205, at \*7. Contrary to Hemwall's claim, the reformatting of an already filed motion does not qualify as a "uniquely demanding" legal task. Appellant's Br. 9. At the least, counsel could have filed a simple "protective" petition within the time limit. *Pace*, 544 U.S. at 416; *see Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002).

In short, Hemwall's counsel did not file his petition on time because it was not his counsel's priority. In fact, counsel admits that his personal difficulties led him to "prioritize[]" "[i]mmediate deadlines" for "court appearances and sentencing hearings" in other cases over the deadline for the habeas petition in Hemwall's case. Appellant's Br. 11–12. Yet this "garden variety claim of excusable neglect" does not allow us to overlook the statute of limitations. *Menominee Indian Tribe*, 577 U.S. at 257–58 (quoting *Irwin*, 498 U.S. at 96).

One last point. Courts typically break causation down into two concepts: both factual (or but for) cause and legal (or proximate) cause. *See, e.g.*, *Paroline v. United States*, 572 U.S. 434, 446 (2014); *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265–68 (1992). At least one court has suggested that equitable tolling requires "[s]omething more than" a "but-for" causal connection between the extraordinary circumstance and the untimely filing. *Conroy v. Thompson*, 929 F.3d 818, 820 (7th Cir. 2019) (Barrett, J.) (citation omitted). But our caselaw has yet to distinguish between these two causation standards in this tolling context. *See Borns*, 167 F.4th at 346; *Ata*, 662 F.3d at 742. Nor did the district court's opinion here. *See Hemwall*, 2025 WL 1691205, at \*6–7. The opinion could be read to suggest that counsel's personal difficulties were not the but-for cause of the untimely filing because he would have filed the

petition out of time even without those difficulties given his decision to "prioritize his other cases" over the habeas petition. *Id.* at \*7. Or it might be read to suggest that counsel's decision to prioritize the other cases qualified as the superseding proximate cause of the late filing. *Cf. Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996). The parties have not addressed this issue. For clarity, we read the opinion as rejecting Hemwall's request for equitable tolling because of the absence of factual (or but for) causation. *See Blackman v. Cisneros*, 122 F.4th 377, 382–83, 388 (9th Cir. 2024). We affirm the decision on that (fact-based) but-for causation ground. We thus can save proximate cause (and the standard of review that we would apply to proximate cause) for another day.

Hemwall's counterarguments do not change things. He first argues that the district court applied an "overly restrictive standard" that required him to show "complete attorney abandonment" to establish extraordinary circumstances. Appellant's Br. 7. In his view, an attorney's circumstances may qualify as extraordinary if "they effectively hinder a petitioner's access to federal review." *Id.* at 8. Yet we do not need to decide what circumstances qualify as "extraordinary" to resolve this case. Even assuming (debatably) that Hemwall established those circumstances, he did not also prove that the circumstances "prevented him from filing on time." *Born*, 167 F.4th at 346. And to the extent Hemwall argues that the extraordinary circumstances need only *hinder* a timely filing, the Supreme Court has rejected that more lenient test. It has said instead that the circumstances must have "*prevented* timely filing." *Menominee Indian Tribe*, 577 U.S. at 255 (quoting *Holland*, 560 U.S. at 649) (emphasis added).

Hemwall next argues that the interests of justice supported equitable tolling. He points to his "modest delay," the lack of "prejudice" to the warden, his "serious constitutional claims," and the "unique combination" of his circumstances. Appellant's Br. 14–16. But this argument relies on the ad hoc, multi-factor balancing test that we once used to decide equitable-tolling questions. *See, e.g.*, *Dunlap*, 250 F.3d at 1008. The Supreme Court rejected that test in *Holland* in favor of the two-part approach that we apply in this habeas context today. *See Hall*, 662 F.3d at 749–50. Now, all that matters is whether Hemwall can show that he acted with reasonable diligence and that an extraordinary circumstance prevented him from filing his petition on time.

Because he has failed to prove the second of these "elements," his claim for equitable tolling lacks merit. *Menominee Indian Tribe*, 577 U.S. at 256 (quoting *Pace*, 544 U.S. at 418).

Lastly, Hemwall asserts that the district court at least should have held an evidentiary hearing to resolve "lingering questions of fact" about his request for equitable tolling. *Nassiri*, 967 F.3d at 548; *see Robertson*, 624 F.3d at 785–86. We typically review a district court's decision not to hold an evidentiary hearing for an abuse of discretion. *See Gardner v. United States*, 122 F.4th 254, 263 (6th Cir. 2024). The district court properly exercised its discretion here. For one thing, Hemwall did not even request an evidentiary hearing in the district court. So he has forfeited this belated request. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011–12 (6th Cir. 2022). For another thing, Hemwall identifies no factual questions that would make an evidentiary hearing necessary. *See Nassiri*, 967 F.3d at 548–49. The district court accepted Hemwall's central factual allegations about his attorney's personal difficulties but found that these difficulties did not prevent him from filing a timely petition. Hemwall makes no other specific allegations that might produce a different factual finding if he had a chance to prove the allegations at an evidentiary hearing. So such a hearing would be a pointless exercise.

\* \* \*

We end by highlighting (and distinguishing) an equitable-tolling circuit decision that remanded for an evidentiary hearing on its own initiative. *See Davis v. Lempke*, 642 F. App'x 31, 33–34 (2d Cir. 2016) (order). The attorney in *Davis* simply missed the habeas deadline and argued on appeal that "his own incompetence" justified equitable tolling. *Id.* at 33. Given the attorney's inherent conflict of interest in making this misconduct argument while attempting to salvage his reputation, the Second Circuit reversed to ensure that the conflict had not led the attorney to downplay the argument's force. *See id.* at 34; *see also Nassiri*, 967 F.3d at 548.

Although Mihas both missed the deadline and filed the appeal, we reiterate that he has not argued that Hemwall should receive equitable tolling because of his misconduct. To the contrary, Mihas denied at argument that he had committed even ordinary malpractice—let alone the egregious misconduct that might suffice for tolling. Mihas also claimed that he had disclosed his medical difficulties to Hemwall and that Hemwall had consented to his continued

representation.  We sympathize with counsel given those difficulties.  But it is not obvious that this type of conflict is waivable.  *Cf. Davis*, 642 F. App'x at 33 n.1; *Evans & Luptak, PLC v. Lizza*, 650 N.W.2d 364, 371 (Mich. Ct. App. 2002) (Griffin, J.).  Nor is it obvious that Mihas's action met the standard of care.  Still, we see no basis to remand for the district court to consider a new misconduct argument that has never been raised in this litigation.  *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020).  And the record reveals "no potentially meritorious" tolling argument on those grounds.  *Nassiri*, 967 F.3d at 549.

We affirm.